UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| United States of America, | § |
| | § |
| v. | § Case No. H-21-CR-163 |
| | § |
| Derrick Langford, | § |

## ORDER REVOKING BOND

Pending before the court is the United States' Motion to Revoke Bond. ECF No. 89. On June 24 and 25, 2024, the court held hearings on the motion. The motion is **GRANTED**. Defendant Derrick Langford is **REMANDED to CUSTODY**.

Because the district judge sentenced Langford to a term of imprisonment, ECF No. 71, and because Langford was scheduled to surrender to the Bureau of Prisons on July 8, 2024, ECF No. 83, the United States Marshal Service is **ORDERED** to surrender custody of the Defendant to the Bureau of Prisons for him to begin serving his sentence of imprisonment.

### 1. Background and Facts

On January 23, 2024, the court sentenced Langford to twenty-four months in prison. ECF No. 71. The court permitted Langford to remain on bond pending self-surrender to the Bureau of Prisons on April 4, 2024. ECF No. 73. Langford filed two motions to extend his surrender date. ECF Nos. 74, 82. In both motions, Langford's counsel represented that "as it was discussed with some detail during his sentencing hearing – Mr. Langford is the *sole and exclusive* caretaker of his mother, Janice G. Ford." *See, e.g.*, ECF

No. 74 at 2. In both motions, Langford represented to the court that his sisters were unwilling and unable to assume responsibility for their mother's care. *See, e.g.*, ECF No. 74 at 3. In reliance on the representations in the motions for extension of time, the court twice extended Langford's surrender date. ECF Nos. 77, 83.

On May 10, 2024, Langford filed a Motion for Compassionate Release, in which he requested that he be sentenced to home confinement rather than to the Bureau of Prisons. ECF No. 83 at 34. The crux of the motion was that Langford is his mother's only available caretaker and that his sisters are unwilling and unable to care for Ford. *Id.* at 29–30. Attached to the Motion for Compassionate Release was a document that purported to be Langford's sister, LaShonda Hawkins' declaration. ECF No. 84-4. At the hearing on the pending motion, Langford's counsel explained that Langford sent him a signed version of the declaration. Due to technical issues, counsel could not upload the signed version onto the court's docket, so he re-typed it and placed the re-typed version onto the docket. The court filed the original, signed version of the declaration as Court's Exhibit One to the revocation hearing. ECF No. 96. Court's Exhibit One and the version filed at ECF No. 84-4 contain identical statements. The declaration states, among other things, that Hawkins is "unable to assist with the daily care of [her] mother," and was able to check on her mother only "sometimes" "over the lunch hour." ECF No. 96 ¶ 5. The declaration further states that if Langford were to report to prison, Ford would have to "find and pay for 24-hour care." *Id.* ¶ 8.

2

It turns out that most of what Langford told the court about his and his sisters' roles in their mother's care was untrue. Langford is *not* the sole and exclusive caretaker for his mother. As will be detailed below, Hawkins spends a significant part of her time taking care of Ford. She takes care of Ford every day and has done so for the past five years. She has a bedroom suite at Ford's house and sleeps there when necessary.

Importantly, the court concludes that the source of the statements at sentencing, in the motions to continue the surrender dates, and in the Motion for Compassionate Release was Langford himself. Defense counsel, in response to the court's direct questioning at the hearing on the pending motion, stated that it was Langford himself that provided his sister's declaration. The court thus infers that it has been Langford all along who misled his lawyers into believing, and thus representing to the court, that he was the "sole and exclusive" caretaker for Ford, which he is not.

FBI agents interviewed LaShonda Hawkins over the phone on June 18, 2024. The agents identified themselves as FBI agents and questioned Hawkins about her role in caring for her mother. She stated that she provides daily care for her mother during daytime hours. ECF No. 90 at 3. She stays with her mother at night when Langford is out of town, which is as much as a week per month. *Id.* at 3, 6, 13. Hawkins has been caring for her mother for the past five years. *Id.* at 3. Her perception is that "There's been no one to help" care for Ford. *Id.* She bathes Ford, helps her walk, and appears to help with all aspects of Ford's care. *Id.* at 4. Hawkins cares for her mother "every single day." *Id.* at 6.

3

The court notes that Hawkins was not familiar with the declaration she allegedly signed. She told agents that she believed the declaration to be directed toward Langford's relationship with Ford, not the identity of Ford's caretakers. ECF No. 90 at 9–11.

Agents also interviewed Hawkins' son, Reginald Calhoun. Calhoun told agents that Hawkins provides daily care to Ford. ECF No. 90 at 27. According to Calhoun, Hawkins has a bedroom at Ford's house where she stays overnight "fairly frequently." *Id.* In an interview with Hawkins' sister, Yvette Baker, Baker told agents that Hawkins takes physical care of Ford and is with Ms. Ford "more than anybody." *Id.* at 38.

The court credits Hawkins, Calhoun, and Baker's statements. Langford presented no evidence to demonstrate that Hawkins, Calhoun, and Baker were untruthful to the agents. The court concludes that Langford lied to his lawyers about his role in caring for his mother. Those lies were intended to be repeated to the district judge in an unlawful effort to obtain leniency and to delay his surrender date. Accordingly, there is probable cause to believe that Langford committed a violation of, among other statutes, 18 U.S.C. § 1503, which criminalizes any corrupt endeavor to influence any officer of any United States court.

### 2. Legal Standards

Revocation of supervised release is governed by 18 U.S.C. § 3148. Under section 3148(b)(1), the judicial officer "shall" enter an order of revocation if (1) there is either probable cause that the defendant committed a new crime or violated any other condition of release, and (2) that there are no conditions that will assure his

appearance, or he is unlikely to abide by any conditions of release. Moreover, if the court finds probable cause that the defendant committed a felony while on release, there is a presumption that there are no conditions that will assure he will not pose a danger to the community. 18 U.S.C. § 3148(b).

Because Langford has already been sentenced and is awaiting execution of his prison sentence, 18 U.S.C. § 3143(a) also applies. Under that section, "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)."

### 3. Analysis

Langford arguably rebutted the presumption described above, but the court nevertheless concludes there are no conditions of release that will assure his appearance. He has lied repeatedly to avoid going to prison. There is probable cause that he committed a series of federal crimes to avoid going to prison. The court does not believe that Langford will follow any conditions that the court might set. It is true that he has behaved while on release thus far, but now that prison is inevitable, he has undertaken a criminal venture to avoid it. He has involved his lawyers in a campaign to mislead the court into vacating the prison portion of his sentence. The court cannot imagine any conditions that will ensure Langford reports to prison as directed. The court certainly cannot find by

clear and convincing evidence that such conditions exist, which section 3143(a) requires before a defendant in this procedural posture may be released.

### 4. Conclusion

Derrick Langford's bond is revoked, and he is **ORDERED** detained pending designation to a Bureau of Prisons facility.

The Clerk of Court shall provide a copy of this order to the United States Marshal who shall notify the Bureau of Prisons that Langford is in custody and must, pursuant to the court's final judgment, be placed in the custody of the Bureau of Prisons to begin serving his sentence.

Signed at Houston, Texas, on June 28, 2024.

_____
Peter Bray
United States Magistrate Judge